Cheryl A. Miller v. Allstate Insurance Company

Case No. _____

Exhibits to Notice of Removal

| | |
|---|---|
| Exhibit A | Complaint, Summons, Civil Cover Sheet, Certificate of Compulsory Arbitration filed in Maricopa County Superior Court, Case No. CV2010-070588 |
| Exhibit B | Notice of Removal filed in Maricopa County Superior Court, Case No. CV2010-070588 |

**Exhibit A to Notice of Removal**

**Complaint, Summons, Civil Cover Sheet, Certificate of Compulsory Arbitration filed in Maricopa County Superior Court, Case No. CV2010-070588**

IN THE SUPERIOR COURT OF MARICOPA COUNTY, ARIZONA

COPY
OCT 1 5 2010
MICHAEL K. JEANES, CLERK
J. ORTIZ
DEPUTY CLERK

Cheryl A. Miller,

16306 W. Willow Creek Lane

Surprise, Arizona 85374

623-255-5508

Plaintiff

Vs

Allstate Insurance Company,

Defendant

Case No:

Judge:

**COMPLAINT**

CV2010-070588

Now comes Plaintiff, Cheryl A. Miller, who resides at 16306 W. Willow Creek Lane, Surprise, Arizona, 85374. Plaintiff is a resident of Maricopa County, Arizona and is single.

Plaintiff was employed by Allstate Insurance Company on March 24, 2008 until October 20, 2009. Plaintiff's title during her employment with Allstate Insurance Company was a "Casualty Unrepresented Processor" located at The Black Market Claim Office, 2902 W. Aqua Fria Fwy; Suite 1000, Phoenix, Arizona 85027.

Plaintiff was paid a salary at $528.00 per week and was scheduled to work 40 hours per week. See Exhibit 1.

Plaintiff was terminated by Allstate Insurance Company as a "Casualty Unrepresented Processor" on October 20, 2009.

Plaintiff was advised on August 20, 2009 by the Defendant that her position was going to be terminated on October 20, 2010, thus only permitting Defendant two months to secure another position. See Exhibit 2.

Plaintiff attempted to secure another position within the company, however the Defendant, Allstate Insurance Company informed her that there were no other positions available at her Level.

### COUNT I

WHEREFORE, Plaintiff, during her employment with the Defendant, Allstate Insurance Company worked approximately 600 hours overtime, calculating approximately 5 to 10 hours per week overtime. The overtime was reported on the RONA TRUE AUX REPORT TEMPLATE1. Plaintiff is providing limited Exhibits of the RONA TRUE AUX REPORT TEMPLATE1. Defendant has accurate RONA TRUE AUX REPORT TEMPLATE1. See Exhibit 3.

### COUNT II

**WHEREFORE,** Plaintiff was requested to shut off her phone as to not record the overtime hours Plaintiff performed. This request was made by Plaintiff's supervisor, Kelly Frueh, Casualty ACM of Allstate Insurance Company.
See Exhibit 4.

### COUNT III

WHEREBY, Plaintiff was not compensated for said overtime hours. Plaintiff worked overtime because her computer failed many times during her scheduled work hours and Plaintiff needed to meet the "Quota of closing files for adjuster review."

### COUNT IV

WHEREBY Plaintiff requested many times to the Allstate Technology Support, Enterprise Help Center, Customer and Enterprise Support, 1819 Electric Road, Roanoke, Va. 24018 technical team to repair her computer so she could adequately perform her duties. The technical team failed to repair her computer upon request making it difficult for Plaintiff to adequately

perform her duties, thus making her stay overtime in order to make her weekly Quota of Closed Files.

Plaintiff brought this matter to the attention of her Supervisor, Kelly Frueh whereby Ms. Frueh requested to have Plaintiff come and get her in person to show her how the computer failed. Plaintiff did exactly this and and showed her the computer screen, where it stated "The Event Log File Is corrupt." Ms. Frueh hit the delete button to erase the proof. In the meantime, Plaintiff was on the phone with the Computer Support Tech at the same time Ms. Frueh looked at her computer and deleted the screen.

Plaintiff requested the Computer Support Tech to send her proof that the Operating System was corrupt. See Exhibit V.

Plaintiff contacted the Computer Support Team approximately 50 times to fix her computer because it was not properly functioning. See Exhibit VI. The problem was that Plaintiff was plugged into a "Network Port" which permitted other employees to load onto Plaintiff's hard drive, thus causing the computer to lock up and crash. The Plaintiff could never get proper technical support or administrative support to grant an operational computer that permits Plaintiff a full day of working on the files.

## COUNT V

Plaintiff requested to have her computer repaired by the Tech support from March 31, 2008 until October 9, 2009, thus having continuous computer issues that forced to her to work overtime. At times, Plaintiff had to use other employees computers to complete her work, thus whenever her ID would appear, the employees computers would lock up. Plaintiff's supervisor requested to the Home Office that Plaintiff's ID be changed as to not have other computers lock up and crash. This request was denied by the Home Office, causing the Plaintiff to continue having difficulty. It was learned by Plaintiff that her Employee Identification was

corrupt. See Exhibit VII.

## COUNT VI

Plaintiff would have been a successful employee if she did have the technical support she required to bring her work evaluation to an Outstanding" status. However, Defendant evaluated Plaintiff's work performance to "Fair." See Exhibit VII. Plaintiff did not agree with this "Fair" evaluation and did not sign the Performance Appraisals Status. See Exhibit VIII. This "Fair" performance evaluation was based on Plaintiff's inability to bring her work performance to a higher level due to the difficulty she was having meeting the "Quotas" based on the computer issues. Thus making Plaintiff work overtime. Plaintiff was not compensated for overtime.

## COUNT VII

Plaintiff has suffered financially and is in the process of losing her house due to "An Intent to Accelerate Foreclosure with Bank of America." See Exhibit VIII. Plaintiff also has suffered emotionally and physically due to losing her Group Life, Disability and Accidental Death Benefits. Also, Plaintiff's hospitalization, in which she was paying $151.00 per month will increase to $563.00. Plaintiff cannot afford to pay this amount for her hospitalization. Plaintiff suffers from Rheumatoid Arthritis and needs adequate insurance coverage for her condition. As a result of Plaintiff's inability to pay her mortgage and other living expenses, Plaintiff's credit score has suffered. Plaintiff will have a difficult time in securing any job related position if a credit score is investigated in order for her to be considered for a job.

Plaintiff's house is valued at this market at approximately $210,000.00. She will lose the house to Foreclosure, thus causing her a loss of moving costs, additions she personally made to her home for a screened in porch which cost her approximately $20,000.00. If Plaintiff were currently employed with Allstate, she could have continued making the mortgage payments.

Plaintiff had excellent credit prior to her discharge at Allstate. She is suffering from other financial institutions, demanding payments for credit card payments she cannot afford to make at this time.

## COUNT VIII

Plaintiff has no other source of income at this time and has been living off a savings account which has depleted substantially, causing her financial stress and burden.

In addition to the burdens Plaintiff has suffered as a result of her discharge from Allstate, Plaintiff was unable to continue her education by attending the University of Phoenix, Bachelor Degree Program. Plaintiff was approved to attend the continued educational program Allstate provided for her. Plaintiff was promised that if she earned a "Fair" performance evaluation, Defendant would approve the proper forms for her to begin making plans for enrollment in the University of Phoenix, Bachelor Degree Program. Plaintiff requested three times for her supervisor, Ms. Frueh, to sign the proper forms for Plaintiff's continued educational program. Ms. Frueh failed to sign the forms, thus not enabling Plaintiff to begin the program. Plaintiff was promised $5,250.00 per year for her college expenses. Thus, as a result of the negligence of her supervisor not to sign the proper forms for her to continue her education, Plaintiff, in her eagerness to climb the ladder at Allstate, with obtaining her Degree that she could not fulfill, caused her emotional and psychological distress, thus she was denied the opportunity afforded her because of Defendants lack of responsibility to properly give Plaintiff the proper computer to adequately perform her duties. See Exhibit IX.

## COUNT IX

Plaintiff was not reimbursed for the Pension Cash Balance they contributed on her behalf. Plaintiff is due $346.73. See Exhibit X

WHEREFORE, Plaintiff hereby requests this Honorable Court to order Defendant to reimburse

Plaintiff for the overtime she is due in the amount of $11,772.00 as well as court fees and damages that Plaintiff suffered as a result of her discharge. Plaintiff further request this Honorable Court to award her $33,267.00 for the salary and benefits she would have earned, if if she was not discharged from October 20, 2009 until present. Also, Plaintiff requests this Honorable Court grant Plaintiff $5,250.00 for the Educational Program she was denied, as well as $197,000.00 for the balance due on her house to avoid Foreclosure.

WHEREAS, Plaintiff prays this Honorable Court grant her a judgment in the amount of $247,289.00 for the above mentioned.

Plaintiff requests a Trial by Jury.

Signed: _____

Cheryl A. Miller, Pro Se

Proof Of Service

Thomas J. Wilson,

Chairman, President and Chief Executive Officer

Allstate Insurance Company

2775 Northbrook, Illinois

60062

847-402-5000



**EXHIBIT I**

```
Mrs Cheryl A. Miller
16306 W Willow Creek Lane
Surprise AZ  85374

Personnel #   114180

-------------------------------------------------
 Pay Period: 09/27/2009 - 10/10/2009

 Pay Date:   10/09/2009

 Deposit Amount:     803.82

 ABA Transit # 322271627     Account #  4413703798
-------------------------------------------------

-------------------------------------------------
 EARNINGS SUMMARY         CURRENT           YTD
-------------------------------------------------
  Earnings:             1,056.46        22,133.36
  Less
   Taxes:                 176.89         3,760.61
   Deductions:             75.75         1,584.96
  Add
   NCA Taxes Pd:            0.00             0.00
                        --------        ---------
  Total:                  803.82        16,787.79
-------------------------------------------------

-------------------------------------------------
 EARNINGS                        HOURS     AMOUNT
-------------------------------------------------
 Earnings for Period 09/27/2009 - 10/10/2009
   Regular Earnings                      1,056.46
-------------------------------------------------

-------------------------------------------------
 MISCELLANEOUS                             AMOUNT
-------------------------------------------------
 For Period 09/27/2009 - 10/10/2009
   Taxable GrLife Income NCA                 6.16
-------------------------------------------------

-------------------------------------------------
 TAXES                         CURRENT       YTD
-------------------------------------------------
 Federal
  Federal      Single  01 Exemptions
    TX Withholding Tax           82.80    1,798.74
    TX EE Social Security Tax    61.56    1,289.72
    TX EE Medicare Tax           14.40      301.63
 State
  Arizona      Single  01 Exemptions
    TX Withholding Tax           18.13      370.52
-------------------------------------------------

-------------------------------------------------
 DEDUCTIONS                    CURRENT       YTD
-------------------------------------------------
 Medical PPO-F                  199.58    4,172.73
 Dental                          13.17      276.57
 Vision                           4.55       95.55
 Grp Life Pre-Tax                10.97      228.21
 LTD                              5.97      126.35
 Credit Dental                   -7.90     -165.90
 Credit Life                     -0.91      -19.11
 Credit Medical Opt Out        -149.68   -3,129.44
-------------------------------------------------
```

*[handwritten annotation:]* 528.23 per wk
$13.21 HR

## EXHIBIT II

LOAN 115148413

## 60-DAY EMPLOYEE
## NOTIFICATION LETTER

August 20, 2009

Cheryl Miller
Casualty Unrepped Processor

The Western Star Leadership Team has completed a review of the CSA organization. Next Gen efficiency gains as well as notice counts have resulted in the need to reduce staffing levels. Due to this business decision your position is being impacted. This letter is formal notification that should you not secure another position within the company by October 20, 2009; your employment will be terminated.

If your employment does terminate as a result of this business decision, you will be eligible for severance pay and other benefits in accordance with Allstate policy. Attached is a copy of the Workforce Restructure Employee Reference Guide and Severance Summary Plan Description. Please review these guides carefully. If you have any questions, please call Dramond Hester at 602-631-6245.

Regards,

*[signature]*
Gerald Salas
Human Resource Manager

# True Aux Group Daily Report

--This report can be found in CentreVU Supervisor under Reports/Historical/CMS Custom/True Aux Group Daily.
--This is a daily historical report

| | Description | Database Item/Calulations |
|---|---|---|
| ACD CALLS | The number of skill ACD calls that were answered by the agent that completed during the specified time period. | sum(ACDCALLS+DA_ACDCALLS), sum<TOTAL_ACDCALLS> |
| Avg TalkTime | The average time that the agent spent talking on ACD calls that completed during the period covered. | sum(TOTAL_ACDTIME)/sum(TOTAL_ACDCALLS), <AVG_AGENT_ACW_SUM> |
| Extn In Calls | The number of inbound extension calls that were completed by the agent during the period covered. This includes calls received while the agent was in the following work modes: Manual In/AUX work. | sum(ACWINCALLS+AUXINCALLS), sum<EXT_CALL_IN> |
| Avg Talk Time (Extn In Calls) | The average time of the agent's inbound extension calls. | sum(ACWINTIME+AUXINTIME)/sum(ACWINCALLS+AUXINCALLS), <AVG_TALK_TIME_IN_SUM> |
| Extn Out Calls | The number of outbound extension calls that were completed by the agent during the period covered. This includes calls originated by the agent while the agent was in the following work modes: Manual In/AUX work mode | sum(ACWOUTCALLS+AUXOUTCALLS), sum<EXT_CALL_OUT> |
| Avg Talk Time (Extn Out Calls) | The average length of the agent's outbound extension calls. | sum(ACWOUTTIME+AUXOUTTIME)/sum(ACWOUTCALLS+AUXOUTCALLS), <AVG_TALK_TIM_OUT_SUM> |
| Total Agent Time ACD | The total time the agent spent talking on all ACD calls during the time period. | sum(I_ACDTIME+I_DA_ACDTIME), sum(<TOTAL_I_ACDTIME>) |
| Total Agent Time % ACD | Total percentage of time agents spend on split/skill ACD calls and in ACW. | 100 * (sum(I_ACDTIME + I_ACWTIME) / sum(I_STAFFTIME)) sum(<PERCENT_ACD_TIME_SUM>) |

EXHIBIT III